**Ernest BROWNING, Petitioner–Appellant,**

v.

**Dale FOLTZ, Respondent–Appellee.**

### No. 86–1960.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 25, 1987.

Decided Jan. 21, 1988.

Rehearing and Rehearing En Banc Denied March 4, 1988.

James Sterling Lawrence (argued), Detroit, Mich., for petitioner-appellant.

James D. O'Hair, Pros. Atty., Olga Agnello–Raspa, Larry L. Roberts (argued), Detroit, Mich., for respondent-appellee.

Before JONES, WELLFORD and GUY, Circuit Judges.

WELLFORD, Circuit Judge.

This petition for habeas corpus has its origin in the 1977 conviction of Ernest Browning for felony murder and rape in Michigan state court. Browning is currently serving a life sentence for the murder and a 40 year term for the rape. The present petition is based on alleged violations of the Interstate Agreement on Detainers (IAD), M.C.L. § 780.601 *et seq;* erroneous jury instructions; destruction of evidence; ineffective assistance of counsel; and on the district court judge's failure to recuse himself from hearing Browning's petition below.

I

There is no question but that Browning exhausted these issues at the state level. Immediately following his conviction he appealed to the Michigan Court of Appeals, claiming it void because of violation of the IAD. Browning claimed that he was the

subject of a detainer issued by Michigan based on these charges while in federal custody in Texas. Because he was not tried within the time limits provided by the Act, he claimed his conviction was void. The court of appeals rejected this claim because it found that while detainers had been issued, the felony murder and rape charges at issue were not the subject of those detainers, and thus the IAD was not implicated. *See People v. Browning*, 108 Mich.App. 281, 310 N.W.2d 365 (1981). The Michigan Supreme Court denied leave to appeal on this claim. Browning later filed for leave to take a delayed appeal based on ineffective assistance of counsel and erroneous jury instructions. These appeals were denied by the Michigan courts.

Browning then filed a petition for habeas corpus in federal court in the Eastern District of Michigan. The petition was initially assigned to Judge Pratt, but was reassigned to Judge Feikens. Browning filed a motion to disqualify Judge Feikins but it was denied by the judge, who also denied a certificate of probable cause. The state issues, as well as the district judge's refusal to recuse himself, are the subject of this appeal.

## II

Petitioner was charged with two counts in an information filed in May, 1974. Count I charged Browning with the death of Delano Smith while in the perpetration of a robbery. Count II charged him with the rape of LaDonna Simmons.[1]

The primary witness against Browning at trial was Michael Champion, a man who had told police about the robbery and murder, as well as other crimes, when he was arrested for armed robbery and rape. According to Champion, he, Browning, Samuel Till and Samuel Christian agreed to commit a robbery in May of 1974. They chose a house, and the four of them set out to commit the crime. Champion said that Browning had a gun and was "calling the shots."

Champion then related what happened at the house. The door was answered by a small child, whom Till put in a closet. Browning, Till and Champion began searching the house for money and drugs, and Champion found a girl in a bedroom and forced her to have sex with him. Browning broke into a safe and took the money he found there. Browning and Till went upstairs, and Champion later saw them assaulting a black male. Till was seen beating the man, later identified as Smith, with an ash tray and Browning was choking him. The conspirators, including Browning, then left the house and divided the stolen money. Smith's body was later found by police in the house, and his cause of death was found to be strangulation.

LaDonna Simmons, the rape victim, testified that she was asleep in the den of the house when she was awakened by Champion pointing a gun at her head. She testified that Browning was with Champion and also raped her.

Prior to trial, the defense made a motion requesting transcripts of all statements made by prosecution witnesses, which was granted by the trial court. During trial, however, defense counsel discovered that the police department had engaged in extensive questioning of Champion, and that Detroit police had taken statements from him which related information about the instant case and many other crimes including a number of homicides. Champion's statements were recorded on cassette tapes; they were not written, and were not produced. Sgt. Kimber explained that the taped statements were the only statements that the police department had from Champion, and that the tapes were "lost." None of Champion's statements were produced for examination by Browning's attorney before or during trial.

## III

■ Browning charges first that Judge Feiken's November 9, 1977, order denying

---

**1.** Browning was also charged with two unrelated murders. These were dismissed by the Michigan Court of Appeals because of IAD viola-tions. *People v. Browning*, 108 Mich.App. 281, 310 N.W.2d 365.

his first petition for habeas corpus[2] includes language which establishes the Judge's bias and prejudice against him so that the judge was required to disqualify himself in this second petition. That portion of Judge Feiken's order which is the basis for Browning's claim states:

If the writ were equated with a detainer and the provisions of the IAD were held to be applicable, this court might have to nullify an otherwise properly obtained murder and rape conviction and dismiss other murder charges against the leader of a gang that terrorized northwestern Detroit neighborhoods for nearly two years with murders, rapes, robberies, and destruction of property. This convicted murderer, rapist, and heroin distributor would be cleared of the charges against him because of technicalities in a law designed to foster the rehabilitation of prisoners by providing for fewer and shorter absences from their primary place of incarceration. Given the facts in this case and petitioner's criminal record, such a result would be illogical and unjust.

Judge Feikens declined to disqualify himself, and stated that he would decide the issues in the petition on the merits and under the applicable law. He also said he was not biased against Browning and that the above statement was a consequence of information involved in considering two of Browning's previous habeas petitions and the state court information. Browning brings this claim based on 28 U.S.C. §§ 144 and 455.[3] The focus is on *objective* appearance or evidence of bias, not on the subjective view of a party, although bias may be shown either by in-court statements or in opinions or orders. *See Roberts v. Bailar,* 625 F.2d 125, 129 (6th Cir.1980). *Nicodemus v. Chrysler Corp.,* 596 F.2d 152, 155–57 (6th Cir.1979); *United States v. Nobel,* 696 F.2d 231, 235 (3d Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983). "The legal standard [for recusal under § 144] requires the facts to be such as would 'convince a reasonable man that a bias exists.'" *United States v. Story,* 716 F.2d 1088, 1090 (6th Cir.1983) (citation omitted). Further, "[A] bias sufficient to justify recusal must be a personal bias 'as distinguished from a judicial one,' arising 'out of the judge's background and association' and not from the 'judge's view of the law.'" *Id.* (citations omitted).

The evidence in connection with this case and as reflected in the Michigan court decision reflects that Browning and his coconspirators involved in this case were, indeed, apparently participants in a number of heinous offenses; that Browning was a leader in the group, and also that Browning had been convicted of serious drug offenses. Courts in considering habeas corpus petitions must often deal with persons who have been involved in serious criminal activities, but such courts are required to examine the law and binding precedent to determine whether the petitioner is, nevertheless, entitled to constitutional relief. A judge may deny a petition for habeas corpus relief from a prisoner and even conclude that he may have indeed committed offenses repugnant to ordered society without being disqualified from consideration of subsequent petitions from the same prisoner, raising other grounds for relief. We find no sufficient showing to

2. This first denial of relief on Browning's first habeas corpus application related to this case was appealed to this court. We held that petitioner had not at that time exhausted his state remedies and the petition was accordingly dismissed without prejudice.

3. 28 U.S.C.A. § 144 (1968) in part:
Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall

proceed no further therein, but another judge shall be assigned to hear such proceeding.
28 U.S.C.A. § 455(a) & (b) (Supp.1987) in part:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
(b) He shall also disqualify himself in the following circumstances:
(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
. . . .

indicate bias requiring recusal on Judge Feikens' part.

## IV

█ Browning's next claim is based on faulty jury instructions. Count I of the information against Browning charged that he, "while in the perpetration or attempted perpetration of a Robbery, did kill and murder one DELANO SMITH, contrary to Sec. 750.316, M.C.L.A. as amended." Count II charged him with raping (assaulting and carnally knowing) a female over age sixteen. The information, however, did not list rape as one of the criminal acts precipitating Smith's death. He was tried on both counts concurrently as the facts giving rise to both counts occurred substantially at the same time and place. The trial court made the following jury charge:

> For murder in the first degree, there must be proven, beyond a reasonable doubt, that the killing occurred as a result of the crime of robbery, *or rape*, in this particular instance, and that the defendant was, at the time, engaged in committing, attempt to commit, or aiding in the commission of that crime.

(emphasis added) This instruction was given more than once. The district court found this to be error because the jury could have decided the murder was done in furtherance of the rape rather than the robbery, which would constitute a variance between the proof at trial and the information. However, the court concluded that this error was "harmless beyond a reasonable doubt." We agree.

Browning argues that this charge constituted a "constructive amendment" of the information, deemed prejudicial per se, rather than a "variance", which is subject to a harmless error analysis and cites *Watson v. Jago*, 558 F.2d 330, 334 (6th Cir. 1977). The state responds (1) that this alleged error was not preserved[4] and (2)

that the error, if any, is harmless because Browning was being tried for both murder and rape, and his defense would have remained the same regardless of the error in the instructions given. The state also contends the error was harmless because there was ample evidence of Browning's participation in both offenses.

█ A defendant has a due process right to notice of the charges against him, *e.g.*, *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948), and the judge must instruct the jury on the law relevant to the specific charges. *DeJonge v. Oregon*, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937). We have considered "amendments" to indictment charges versus "variances" between proof and the indictment charge, stating: "This distinction between an amendment and a variance is critical because a variance is subject to the harmless error rule, ..., whereas an amendment prohibited by *Stirone v. United States*, 361 U.S. 212 [80 S.Ct. 270, 4 L.Ed.2d 252 (1960)] and *Bain* [121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887)] is prejudicial per se." *Watson v. Jago*, 558 F.2d 330, 334 (6th Cir.1977) (citations omitted). Browning contends that the addition of the words, "or rape", to the jury charge constituted an amendment of the information because rape was not a felony included as part of the felony murder charge.

"A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment.[5] In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment." *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir.1978). *See also United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir.1986).

█ We are doubtful that the instruction was more than a variance from the information. First of all, we are troubled by the

---

4. The state claims that Browning's attorney's failure to object to the error renders the error unreviewable due to the state's contemporaneous objection rule. *See People v. Dixon*, 84 Mich.App. 675, 270 N.W.2d 488 (1978).

5. Neither party argues that the fact that we are dealing with an information rather than an indictment is significant. The right involved relates to fair notice of the charges against the defendant. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Watson*, 558 F.2d at 338.

fact that there was no objection to the jury instruction then given and now contended to be a fatal amendment.[6] We do not find under the circumstances that the state court action, although error, warrants setting aside the guilty verdict in the absence of a contemporaneous objection which might well have caused the court to eliminate the offending phrase, "or rape". "Convictions generally have been sustained so long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictments." *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985). Further, an erroneous jury instruction will not cause reversal where the jury's verdict demonstrates that it found against the defendant on all facts necessary to support a conviction. *See United States v. Runnels*, 833 F.2d 1183, 1189 (6th Cir.1987) This is the case here, as the jury had ample evidence that a robbery occurred and that Browning was a part of it.

An additional basis for our decision is the reluctance of courts to find prejudice *per se*. We agree with the district court in its conclusion that "the Supreme Court has recently stated that the prejudice *per se* standard is to be used sparingly. *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). The present issue is not the type that should employ a reversible error analysis." See *Clark v. Rose*, 822 F.2d 596, (6th Cir.1987). We do not find here in respect to the instruction in question, especially in the absence of objection, a "fundamental miscarriage of justice." *United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). We find the error in the instruction, therefore, to be harmless error.

## V

Browning also claims constitutional error based on ineffective assistance of counsel. Under the analysis applied in *Strickland v.*

*Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must establish "[f]irst, ... that counsel's performance was deficient", and "[s]econd, ... that the deficient performance prejudiced the defense", to succeed on a claim of ineffective assistance of counsel. *Id.* at 687, 104 S.Ct. at 2064. Browning claims that his trial attorney's conduct was prejudicially deficient because he did not raise the IAD issue. Further, by failing to object to the claimed erroneous jury charge, he argues that his counsel was deficient and prejudice resulted. Finally, due to counsel's failure to ask specifically for the tapes made of Champion's information, Browning asserts that counsel's conduct was deficient within the meaning of *Strickland*.

The government responds that counsel was not ineffective because, despite possible errors or omissions, the basis of Browning's *defense* was not prejudiced. He was able to and did defend vigorously against the murder charge and against the rape count, and the alleged IAD violation was known to Browning, who was responsible to bring this to the attention of his attorney. A number of technical offenses and objections were made on Browning's behalf.

█ Assistance of counsel is mandated to insure that a defendant receives a fair trial. Reasonably effective or adequate assistance of counsel is the standard, *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), but "judicial scrutiny of counsel's performance must be highly deferential," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional competence." *Id.* at 689, 104 S.Ct. at 2065. Browning's counsel sought discovery in this case and asked for written statements of a key witness. The prosecutor should have indicated that while it had no "written statements" of Champion, it did have at one time tapes of information

---

6. The failure to object, however, may relate to the claim of ineffective assistance of counsel

which we discuss later in this opinion.

furnished by Champion that implicated Browning in the offenses here charged—murder and rape. As the Michigan court stated in indicating some disapproval of the prosecutor's actions, however, "the prosecution is not required to simply turn over his entire file to the defense." *People v. Browning*, 310 N.W.2d at 377. We cannot find the district court's conclusion to be erroneous in finding this alleged error does not warrant habeas corpus relief. This conclusion is prompted by the fact that there was no showing of the prosecutor's "bad faith" in losing the tapes, and the fact that prosecution actually had no written statement of Champion to produce.

We have already discussed the erroneous jury instruction and have concluded it was harmless error. Counsel's oversight in failing to object did not, in our view, result in such serious prejudice that reversal is mandated. The evidence indicated strongly Browning's part in robbery and rape as well as murder in respect to carrying out these felonious activities. As noted, the deficiency was not of the magnitude to preclude a fundamentally fair trial.

Counsel for Browning should have raised the alleged IAD violation defense at the outset. That issue, however, was fully addressed by the Michigan courts and Browning was not prejudiced because of the treatment given this claim at that stage. Our examination of counsel's performance in light of *Strickland v. Washington, supra,* persuades us that petitioner has not demonstrated a right to relief on this basis. We affirm the district court, therefore, in respect to this issue and find that Browning was competently represented.

## VI

The facts surrounding the alleged IAD violation are fully set out in the Michigan Court of Appeals' decision in *People v. Browning*, 108 Mich.App. 281, 310 N.W.2d 365, 368–69 (1981) (on rehearing). To summarize, a warrant was issued against petitioner on another murder charge on August 3, 1974. In October of 1975, petitioner was in custody in Brownsville, Texas, on federal drug charges, and the Detroit Police Department advised the Cameron County, Texas sheriff that petitioner was wanted on still another murder charge and the information in the instant case, and requested that those cases be "lodged against" petitioner. Browning was then not yet serving a federal sentence which was later imposed on November 24, 1975. He served a few months of that sentence in the Cameron County Jail, but was transferred to the Federal Penitentiary at Terre Haute, Indiana on January 21, 1976. On January 30, 1976, the Detroit police placed a "hold" on petitioner in the two other murder cases and requested that detainers be lodged against petitioner in those cases so that Browning could stand trial on those charges. Neither communication mentioned the charges in this case.

On February 21, 1976, defendant was transferred to the Federal Penitentiary at Milan, Michigan pursuant to a writ of habeas corpus *ad prosequendum,* in order to stand trial on the other two murders. Again, the writ apparently did not mention the instant case. Finally, on April 14, 1976, a preliminary examination was held in Detroit Recorders Court on the two other charges listed in the detainer and writ, as well as on the instant case. Petitioner was bound over for trial on all three cases. "Between April 14, 1976, and June 26, 1976, various pretrial conferences were scheduled and adjourned, ... [and] [o]n June 26, 1976, defendant was transferred from Milan back to Terre Haute, primarily because trial was not scheduled to begin until four months later." *Browning*, 310 N.W.2d at 369.

The charges against Browning for the two crimes for which detainers were filed were dismissed due to violations of the IAD. The Michigan Court of Appeals found no violation of the IAD with respect to the charges at issue here because no detainer was ever lodged based on them. This holding noted that Browning's counsel had also waived this alleged defect by not objecting prior to trial that the IAD was being violated. *Browning*, 310 N.W.2d at 372.

■ The initial question we must address is whether a violation of the IAD can give rise to § 2254 habeas relief. While there is a division of authority on this issue, we are satisfied that the majority view dictates that a violation of this kind, if it occurred, is not a basis for habeas corpus relief. *See Stroble v. Anderson,* 587 F.2d 830 (6th Cir.1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979); *Johnson v. Williams,* 666 F.2d 842 (3d Cir.1981); *Cody v. Morris,* 623 F.2d 101 (9th Cir.1980); *Bush v. Muncy,* 659 F.2d 402 (4th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982); *Greathouse v. United States,* 655 F.2d 1032 (10th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982); *Fasano v. Hall,* 615 F.2d 555 (1st Cir.), *cert. denied,* 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 86 (1980); *Huff v. United States,* 599 F.2d 860 (8th Cir.), *cert. denied,* 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979) and *Mars v. United States,* 615 F.2d 704 (6th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 138, 66 L.Ed.2d 60 (1980).[7] We now adopt the majority view and hold that it does not give rise to habeas relief under § 2254.

■ Apart from that, however, we conclude that Browning is unable to make out an IAD violation in this case. The requirements of the IAD in this context are relatively simple. Article III(a) of the IAD provides, in essence, that if a receiving state has an outstanding information or indictment against a person *serving a sentence* in another party state (sending state), *and if* the receiving state has issued a detainer (defined as any notification to the sending state that the receiving state wishes to try the defendant upon an outstanding information), then the defendant must be tried within 180 days (with certain exceptions) after he is delivered to the custody of the receiving state. To invoke the Art. III terms, however, a defendant has to request to be tried in accordance with the IAD. Since it appears that Browning did not specifically request to be tried within the required time limits of Article III(a), no

violation of Article III has occurred. Browning, however, alleges a violation of IAD, Article IV.

Under Article IV of the IAD, once a detainer is filed "trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." 18 U.S.C.A.App. III, § 2, Art. IV(c) (1980). Also, under Art. IV(e), if the trial in the receiving state does not take place *before* the prisoner is returned "to the original place of imprisonment", the receiving state's information "shall not be of any further force or effect, and the court shall enter an order dismissing the [information] with prejudice." *Id.,* Art. IV(e). Browning argues that Article IV was violated because a valid detainer was issued, activating the terms of the Article. He makes a two pronged argument. First he asserts that once he was convicted on November 24, 1975, he was "a person [who] has entered upon a term of imprisonment in a penal or correctional institution of a party State" (the United States), as required by Art. III(a), and the initial detainer which clearly applied to two other charges should be deemed to cover the charges at issue here. In the alternative he argues that the habeas corpus *ad prosequendum* issued should serve as a request for temporary custody for purpose of Act. IV(a).

The state seeks to avoid the IAD provisions in three ways: (1) the "detainer" did not cover these charges because a detainer was never issued with respect to that charge as the Michigan court decided, (2) Browning waived any IAD defects, and (3) Art. IV(e) was not violated by transfer back to Terre Haute because its provisions were never implicated as found by the Michigan court. 310 N.W.2d at 372. The state also points out that Browning, who allegedly knew about the IAD, cannot claim unknowing waiver even though his attorney may not have known of it initially.

7. In *Mars,* we held that IAD violations do not give rise to § 2255 habeas relief.

We conclude that relief under IAD is not warranted on the facts of this case as concluded by the district court. We also conclude that the Michigan Court of Appeals was correct in its analysis of the IAD issue. Finally we find that even if the IAD is applicable, Browning is not entitled to habeas corpus relief based on its violation.

## VII

We have discussed briefly, in considering the ineffective assistance of counsel claim, the failure of the prosecution to produce the missing statements on tapes of Champion. We wish to reemphasize that we do not countenance the failure of the prosecuting attorney to advise Browning's attorney about these circumstances. However, we repeat that in this case we find no reversible error in respect to this issue.

We accordingly AFFIRM the action of the district judge in considering this habeas corpus petition and in his denial of relief.