William J. JONES, Petitioner–
Appellant,

v.

M.L. SMITH, Warden; Attorney
General State of California,
Respondents–Appellees.

No. 99–56405.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 2000.

Filed Nov. 7, 2000.

As Amended on Denial of Rehearing
Jan. 18, 2001.

Marilee Marshall, Marilee Marshall & Associates, Pasadena, California, for the petitioner-appellant.

Ellen Birnbaum Kehr, Deputy Attorney General, State of California, Los Angeles, California, for the respondents-appellees.

Before: BROWNING, HALL, and SILVERMAN, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

In this habeas corpus case we confront the question of whether, as of January 14, 1992, the omission of a premeditation charge from a state court attempted murder information combined with its inclusion in the jury instructions constituted a variance or an amendment to the information. We hold that because premeditation was a sentence enhancing provision under California law on the date Petitioner's conviction became final, the discrepancy between the information and jury instructions was a variance subject to harmless error review. Since Petitioner had actual notice that he was being charged with premeditated attempted murder, we find the error in the case at bar to be harmless, and deny the petition.

I.

Petitioner, William J. Jones, is a state prisoner in California serving a life sentence after being convicted of attempted murder. The facts leading up to Petitioner's conviction are not disputed by the parties. Petitioner and a companion hailed a taxicab to take them from Chino, California to Carson, California. Because Petitioner did not have enough money to pay the full fare, he gave the cab driver, Magdy Ibrahim, a $45 deposit and his identification card, to be held as collateral until Petitioner paid the balance at the end of the trip. Upon arriving in Carson, Petitioner and Ibrahim exited the car. Petitioner asked Ibrahim to return his identification, and Ibrahim requested the balance due. Petitioner then shot Ibrahim four times and reclaimed his identification. Petitioner also took money from Ibrahim's pants and jacket. Ibrahim survived the shooting, but was left paralyzed from the chest down.

On April 18, 1989, state prosecutors filed an information alleging, *inter alia*, that Petitioner did "willfully, unlawfully, and with malice aforethought" attempt to murder Magdy Ibrahim. The information did not allege that the attempted murder was premeditated. The two sides were unable to negotiate a mutually agreeable plea bargain, as Petitioner refused the prosecution's offer of a 14–year–sentence. At trial, both the prosecution and defense assumed that premeditation had been alleged in the information and argued before the jury the issue of whether Petitioner acted with premeditation. At the close of trial, the trial court instructed the jury on the elements of an attempted murder charge, and instructed the jurors to decide not only whether Petitioner was guilty of attempted murder but also whether the attempted murder was "willful, deliberate, and premeditated." The jury convicted Petitioner and found that the murder was willful, deliberate, and premeditated. Petitioner was sentenced to life imprisonment with the possibility of parole, consistent with his conviction of attempted murder with premeditation. On January 14, 1992, the time for Petitioner to file a writ of certiorari with the United States Supreme Court expired, and his case became final for the purposes of direct appeal.

In 1995, Petitioner filed a state court writ of habeas corpus, alleging that he was convicted of a crime with which he never had been charged in the information, in violation of his constitutional right to be informed of the nature and the cause of the accusation against him. Petitioner also alleged that his right to receive effective assistance of counsel had been violated because his lawyers failed to notice the

discrepancy between the information and jury instruction at trial and on direct appeal. The petition was denied by the trial court, the court of appeal, and the California Supreme Court. Petitioner then filed a substantially similar habeas petition in federal court in 1997. The district court denied the petition, accepting the recommendations contained in the report of a magistrate judge. Petitioner filed a timely appeal after the district court granted him a Certificate of Appealability ("COA"). The district court had jurisdiction under 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 & 2253.

## II.

 The district court's decision denying a petition for habeas relief is reviewed de novo. *See Eslaminia v. White*, 136 F.3d 1234, 1236 (9th Cir.1998). The district court's factual findings are reviewed for clear error. *See Houston v. Roe*, 177 F.3d 901, 905 (9th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). Under 28 U.S.C. § 2254(d), the federal courts are not to grant a state inmate's application for a writ of habeas corpus where, as here, the claim was adjudicated on the merits by the state courts, unless the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

## III.

 The district court, in adopting the magistrate's report, held that Petitioner had failed to exhaust his state remedies on his constructive amendment claim by neglecting to present his claim as a violation of the Federal Constitution before the state courts. We agree with Petitioner that the district court's determination was erroneous in this respect. Petitioner's state court briefs explicitly invoked his Sixth Amendment right to be informed of the nature and cause of the accusation during his state court habeas proceedings. Such invocation of the Sixth Amendment's text was sufficient to keep the issue alive in state courts, notwithstanding the fact that his state court briefs predominately cited state court cases.

 Respondent argues that the COA in this case does not mention the district court's failure-to-exhaust determination, so this Court lacks jurisdiction to consider the issue. It would follow that because the district court's exhaustion determination is not properly before us, we cannot reach the merits of Petitioner's claim. Respondent's contention is devoid of merit. Petitioner unambiguously sought a COA with respect to the district court's determination that Petitioner failed to exhaust his state remedies. The district court's order granting a COA does not discuss the exhaustion claim. This omission must have been a mere oversight on the district court's part. Indeed, it would be irrational for a district court to grant a COA with respect to the merits of Petitioner's claims when the appeals court could not even consider those claims because they were not exhausted below. Absent an explicit statement by the district court, in cases where a district court grants a COA with respect to the merits of a constitutional claim but the COA is silent with respect to procedural claims that must be resolved if the panel is to reach the merits, we will assume that the COA also encompasses any procedural claims that must be addressed on appeal. Accordingly, we construe the district court's order as granting a COA with respect to both the court's procedural and substantive rulings on the Sixth Amendment claim. *Cf. Hiivala v. Wood*, 195 F.3d 1098, 1104 (9th Cir.1999) ("A merits panel may therefore expand the issues for review to include issues that the motions panel specifically rejected."), *cert. denied sub nom., Hiivala v. Lambert*, —— U.S. ——, 120 S.Ct. 1281, 146 L.Ed.2d 228 (2000).

■ Petitioner is also correct that courts of appeals that have considered the issue have granted COAs to habeas petitioners whose petitions were denied on procedural grounds. Confronted with similar circumstances, the First Circuit quite sensibly noted, "[w]hile the procedural issues in question are not constitutional, this court has power to consider such preliminary procedural rulings where they are predicates to consideration of a constitutional issue." *Gaskins v. Duval,* 183 F.3d 8, 9 n. 1 (1st Cir.1999). Tellingly, Respondent's contention that "exhaustion is not an issue that can be appealed in a habeas case" is not followed by any case citations. Petitioner's contrary argument is directly supported by the holding of a recent Supreme Court case. *See Slack v. McDaniel,* 529 U.S. 473, 120 S.Ct. 1595, 1603, 146 L.Ed.2d 542 (2000) ("According to the State, only constitutional rulings may be appealed. Under this view, a state prisoner who can demonstrate he was convicted in violation of the Constitution and who can demonstrate that the district court was wrong to dismiss the petition on procedural grounds would be denied relief. We reject this interpretation.... In setting forth the preconditions for issuance of a COA under § 2253(c), Congress expressed no intention to allow trial court procedural error to bar vindication of substantial constitutional rights on appeal."); *see also James v. Giles,* 221 F.3d 1074, 1076 (9th Cir.2000) (relying on *Slack* to reject an identical argument). Under *Slack,* we have no doubt that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," so the procedural test for the granting of a COA was certainly met in this case. *Id.* at 1604. The district court's determination with respect to exhaustion was erroneous, and that determination is properly before this Court.

## IV.

Petitioner's primary habeas claim stems from the divergence between what he was alleged to have done in the information ("he did willfully, unlawfully, and with malice aforethought attempt to murder Magdy Ibrahim"), and what the jury convicted him of doing (attempting to murder Magdy Ibrahim willfully, deliberately, and with premeditation). The exclusion of the terms "deliberately and with premeditation" is legally significant in that it forms the difference between first and second degree murder in California. *See State v. Jones,* 215 Cal.App.2d 341, 30 Cal.Rptr. 280, 283 (1963) ("Murder of the second degree is distinguishable from murder in the first degree in that, while the element of malice aforethought is present in both degrees of murder, in murder of the second degree the killing is not wilful, deliberate and premeditated.") (internal quotations and citation omitted).

■ The success of Petitioner's claim turns on whether this discrepancy constituted a variance or an amendment. The Sixth Circuit in *Browning v. Foltz,* 837 F.2d 276 (6th Cir.1988), succinctly articulated the difference between two types of information/conviction discrepancies: "A variance occurs when the proof introduced at trial differs materially from the facts alleged in the [information]. In contrast, an amendment involves a change, whether literal or in effect, in the terms of the [information]." *Id.* at 280 & n. 5 (quotations and citation omitted).[1] If the discrepancy is a mere variance, then it is subject to the harmless error rule. *See id.* By contrast, if the discrepancy constitutes an amendment (often referred to in the case law as a constructive amendment), then it may be prejudicial per se. *See id.*; *see also United States v. Shipsey,* 190 F.3d 1081, 1087 (9th Cir.1999) (declining to decide whether a constructive amendment always requires reversal, regardless of prejudice to the defendant).

■ As the Supreme Court indicated in *Stirone v. United States,* 361 U.S. 212, 218,

---

1. The *Browning* court correctly noted that any distinctions between informations and indictments are not relevant for Sixth Amendment purposes. *See* 837 F.2d at 280 n. 5.

80 S.Ct. 270, 4 L.Ed.2d 252 (1960), where a defendant is convicted of a crime and where a grand jury never, charges the defendant with an essential element of that crime, a constructive amendment of the indictment has occurred, and reversal is warranted. "If, on the other hand, the variation between proof and indictment does not effectively modify an essential element of the offense charged, the trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in trial that mar its perfection but do not prejudice the defendant." *United States v. Young,* 730 F.2d 221, 223 (5th Cir.1984) (quotations and citation omitted).

In *Lincoln v. Sunn,* 807 F.2d 805 (9th Cir.1987), we noted that a "critical consideration [in determining if a constructive amendment has occurred] is whether the introduction of the new theory changes the offense charged ... or so alters the case that the defendant has not had a fair opportunity to defend." *Id.* at 813. In so doing, we cited with approval *Boothe v. Wyrick,* 452 F.Supp. 1304, 1311 (W.D.Mo. 1978), which found "no prejudice when indictment amended to charge felony murder instead of first degree murder, because the two crimes were not separate offenses under state law." 807 F.2d at 813. Under *Lincoln,* the difference between a constructive amendment and a mere variance therefore hinged on whether the crime specified in the indictment/information and the crime for which the defendant was convicted are separate offenses under state law.

Our ruling in *Lincoln* was consistent not only with the Supreme Court's *Stirone* decision, but with its decision in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), as well. In *McMillan,* the Supreme Court adopted a rule that accorded significant deference to a state's authority to pursue "its chosen course in the area of defining crimes and prescribing penalties." *Id.* at 86, 106 S.Ct. 2411. More precisely, the Court held that a state could treat the "visible possession of a firearm as a sentencing consideration

rather than an element of a particular offense," notwithstanding the fact that such possession subjected the defendant to a significantly higher minimum sentence. *Id.* at 91, 106 S.Ct. 2411. Thus, the Due Process Clause did not require the prosecution to prove firearm possession beyond a reasonable doubt, and the defendant did not have a right to a jury trial on the firearm possession factor. *See id.* at 91–93, 106 S.Ct. 2411. Although the *McMillan* Court did not reach the question of whether the Constitution required the prosecutor to include the visible possession of a firearm in his information, *McMillan*'s import for the constructive amendment / variance line of cases was clear enough. All elements had to be charged in an information and proven beyond a reasonable doubt, with the defendant being given a right to a jury trial on that element. *McMillan* therefore laid the foundation for *Lincoln* by establishing that there were some sentence-increasing factors that were not elements, meaning that they did not need to be charged in an information. *Lincoln* then explained that a state legislature's decision to make a sentencing factor a mere sentencing consideration in a single crime, rather than an added element of a new crime, was ordinarily determinative in removing the constitutional requirement that the factor be charged in the information. Hence, the omission of a sentencing factor, combined with its inclusion in the jury instructions, would be analyzed as a variance rather than a constructive amendment.

■ At the time Petitioner's conviction became final, the California Supreme Court had not yet decided whether premeditated attempted murder and attempted murder without premeditation were separate crimes. But a California Court of Appeal had held that the crimes were the same offense and that the increased penalty for premeditated attempted murder was a sentencing enhancement. *See People v. Douglas,* 269 Cal.Rptr. 579 (Cal. Ct.App.1990). The California Supreme

Court has since confirmed that attempted murder is a single offense and that attempted murder in the first degree is a sentencing provision implicated when the defendant acted with premeditation, rather than a necessary element of a separate offense:

> [W]e conclude that the provision of section 664, subdivision (a), prescribing a punishment of life imprisonment with the possibility of parole for an attempt to commit murder that is "willful, deliberate, and premeditated" does not establish a greater degree of attempted murder but, rather, sets forth a penalty provision prescribing an increased sentence (a greater base term) to be imposed upon a defendant's conviction of attempted murder when the additional specified circumstances are found true by the trier of fact.[2]

*People v. Bright,* 12 Cal.4th 652, 669, 49 Cal.Rptr.2d 732, 909 P.2d 1354 (1996). In making its ruling, the California Supreme Court expressly approved of *Douglas* and its reasoning. *See id.* at 666–67.

Under *Lincoln,* the omission of the premeditation charge from Petitioner's information amounted to a variance. Petitioner was charged in the indictment with attempted murder. The jury convicted him of attempted murder, and also found beyond a reasonable doubt that he had acted with premeditation, thereby subjecting Pe-

titioner to the maximum possible penalty for attempted murder.[3] This discrepancy between the ˌinformation and conviction neither changed the offense with which Petitioner was charged nor denied Petitioner a fair opportunity to defend, meaning that it did not rise to the level of a constructive amendment under *Lincoln.* *See* 807 F.2d at 813. That remains true even where, as in this case, it was the jury, as opposed to the judge, who determined whether the sentencing enhancement was applicable. Including the premeditation charge in the information would have been preferable, but the Constitution did not compel its inclusion as of January 14, 1992.

### V.

In the time since Petitioner's direct appeal became final, the Supreme Court has substantially altered the rule laid out in *McMillan* and followed in *Lincoln.* When it was handed down in 1998, the Court's opinion in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), seemed to solidify and extend *McMillan*'s holding. *Almendarez–Torres* involved a constitutional challenge to the defendant's conviction. The defendant's federal indictment alleged that he had been found in the United States after having been previously deported, in violation of 8 U.S.C. § 1326. *See id.* at 227, 118 S.Ct. 1219. Ordinarily, the maximum authorized sentence for violating

**2.** Petitioner points out that section 664(a) clearly states that the "additional term provided in this section for attempted willful, deliberate, and premeditated murder shall not be imposed unless the fact that the attempted murder was willful, deliberate, and premeditated is charged in the accusatory pleading and admitted or found true by the trier of fact." Reading this plain language literally, the absence of a premeditation charge from Petitioner's indictment appears to preclude his conviction of premeditated attempted murder. However, in *People v. Bright,* the California Supreme Court decided that premeditation was not an element of attempted murder, and therefore that the Constitution did not compel its inclusion in Petitioner's information. We are, of course, bound by the

California Supreme Court's construction of a California statute.

**3.** The California statute governing attempted murder at the time read in pertinent part:

> [I]f the crime attempted is willful, deliberate, and premeditated murder, as defined in Section 189, the person guilty of that attempt shall be punished by imprisonment in the state prison for life with the possibility of parole; provided, further, that if the crime attempted is any other one in which the maximum sentence is life imprisonment or death, the person guilty of the attempt shall be punished by imprisonment in the state prison for five, seven, or nine years.

Cal.Penal Code § 664(a), *subsequently amended by* Stats.1997, c. 412.

§ 1326 is two years imprisonment. *See* § 1326(a)(2). But under § 1326(b)(2), a defendant may be, imprisoned for up to twenty years if he was previously deported "subsequent to a conviction for commission of an aggravated felony." The defendant pled guilty to violating § 1326(a). Later, at his plea hearing, the defendant admitted to having been deported earlier pursuant to three prior convictions for aggravated felonies. At sentencing, the Government sought a sentence in excess of two years in light of the defendant's admitted violation of § 1326(b)(2). The defendant argued that because the indictment did not allege that he had been deported previously on account of felony convictions, he could not be sentenced to more than a two year term. The district court agreed with the Government, and sentenced the defendant to a term of 85 months imprisonment. The Fifth Circuit affirmed. By a five-to-four vote, the Supreme Court affirmed.

The Court began by noting that while "[a]n indictment must set forth each element of the crime that it charges, ... it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Id.* at 228, 118 S.Ct. 1219. The Court then analyzed the language, structure, context, subject matter, and legislative history of the statute before concluding that § 1326(b)(2) was merely a sentencing provision, and not a separate element of an offense. *See id.* at 235, 118 S.Ct. 1219. Recognizing that § 1326(b)(2) presented a more problematic statutory scheme than the one at issue in *McMillan,* the *Almendarez–Torres* Court saw fit to extend *McMillan* to cover the case at bar. *See id.* at 242–46, 118 S.Ct. 1219. Accordingly, the omission of the charge that the defendant had previously been deported on account of earlier felony convictions from the indictment did not render his subsequent conviction and sentence constitutionally unsound.

Two terms later, the Supreme Court reversed course, again by a five-to-four margin, calling *Almendarez–Torres*'s continuing viability into serious question. In *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the Court reversed the defendant's criminal conviction under a New Jersey hate-crimes law that allowed a trial judge to impose greater penalties upon a defendant if the judge found by a preponderance of the evidence that the defendant committed some crime for the purpose of intimidating a member of a protected group on account of her group identity. *See id.* at 2351. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Along the way, the Court limited the holding of *McMillan* "to those cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the jury's verdict," *id.* at 2361 n. 13, and stated that *Almendarez–Torres* was arguably incorrectly decided. *See id.* at 2362. After *Apprendi, Almendarez–Torres* "represents at best an exceptional departure from the historic practice" of the Court. *Id.* at 2361.

Although *Apprendi* involved a failure to submit a factual determination to a jury for proof beyond a reasonable doubt rather than a discrepancy between an indictment and conviction, *Apprendi*'s implications for this latter line of cases is underlined by the Court's extensive discussion of the historical unity between those facts that must be charged in an information and those that must be proven beyond a reasonable doubt. *See id.* at 2355–57; *see also United States v. Aguayo–Delgado,* 220 F.3d 926, 933 (8th Cir.2000) (interpreting *Apprendi* to mean that "if the government wishes to seek penalties in excess of those applicable by virtue to the elements of the offense alone, then the government must charge the facts giving rise to the increased sentence in the indictment, and must prove those facts to the jury beyond a reasonable doubt."). *Apprendi* thereby expands the range of discrepancies that, under *Stirone,* will amount to constructive amendments and narrows the list of discrepancies that will be treated as mere variances.

## VI.

■ After *Apprendi*, California's treatment of premeditation as a sentencing factor, which was the basis for the California Supreme Court's holding in *Bright*, 12 Cal.4th at 669, 49 Cal.Rptr.2d 732, 909 P.2d 1354, is open to question.[4] We need not decide the question of whether Petitioner's conviction comports with *Apprendi*, however, because we find that the non-retroactivity principle pronounced in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), prevents Petitioner from benefitting from *Apprendi*'s new rule on collateral review.

In *Teague* a plurality[5] of the Supreme Court laid out the factors that a court must consider in deciding whether to allow a habeas petitioner to benefit from a rule that was adopted after the defendant's conviction became final for the purposes of direct appeal. "The retroactivity rule adopted in *Teague* reflects not only a healthy measure of respect for state court decisions that complied with contemporaneous constitutional norms, but it also serves a policy of treating all similarly-situated defendants equally on federal habeas." *Carriger v. Lewis*, 948 F.2d 588, 595–96 (9th Cir.1991), *aff'd upon rehearing en banc*, 971 F.2d 329 (9th Cir.1992) (en banc). Under *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government [or] if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. 1060. Under either definition, *Apprendi* certainly established a new rule; that much is clear from the Supreme Court's declaration in *Jones v. United States*, 526 U.S. 227, 248, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), that the issue was, as of 1999, "not yet settled."[6] Therefore, an analysis of the *Teague* factors is appropriate.

---

**4.** Respondent forthrightly conceded as much in its response to our request for supplemental briefing concerning the effect of *Apprendi* on the instant case. *See* Appellees' Supplemental Brief at 3 n. 1 ("Respondents observe that the determination of the California Supreme Court in *Bright*, that a premeditation and deliberation allegation is a sentencing factor[,] may no longer be viable.").

**5.** Although only four justices fully embraced the *Teague* plurality opinion at the time it was handed down, it is now accorded the full precedential weight of a majority opinion. *See, e.g., Caspari v. Bohlen*, 510 U.S. 383, 389–90, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994); *Penry v. Lynaugh*, 492 U.S. 302, 314, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *Greenawalt v. Ricketts*, 943 F.2d 1020, 1023 (9th Cir.1991) (noting that *Teague*'s analysis "has been subsequently affirmed by a majority of the Court").

**6.** *Apprendi* itself is not to the contrary. The decision revealed a wide gulf between the five justices in the majority and the four dissenters over how to characterize the majority's holding. To the majority, the decision was a restoration of what had been, prior to *Almendarez-Torres*, a "uniform course of decision during the entire history of our jurisprudence." 530 U.S. at ——, 120 S.Ct. at 2362. The dissenters read *Apprendi* in a rather different light. To them, the majority's holding imposed a new, revolutionary constitutional rule that "will surely be remembered as a watershed change in constitutional law." 530 U.S. at ——, 120 S.Ct. at 2380 (O'Connor, J., dissenting). The analysis is further complicated by Justice Thomas's concurring opinion (joined by Justice Scalia), which plainly indicates that in their view *McMillan* began a revolution, that *Almendarez-Torres* merely followed *McMillan*'s mistake, and that *Apprendi* represents nothing more than a return to the pre-*McMillan* "status quo ante." 530 U.S. at ——, ——–——, 120 S.Ct. at 2367, 2377–78 (Thomas, J., concurring). Justice Thomas's view is particularly noteworthy because he supplied the critical fifth vote in *Almendarez-Torres*, and subsequently repudiated that vote in *Apprendi*. *See id.* at 2379.

In the final analysis, then, six members of the *Apprendi* Court apparently viewed *Apprendi* as a reversal of the *McMillan* line of cases. Since *McMillan* governed at the time Petitioner's conviction became final, the *Apprendi* holding is properly understood as a new rule for *Teague* purposes, however ancient its actual origins. *Cf. Carriger*, 948 F.2d at 597 ("[W]e hold that a constitutional rule is newly created—and thus a new rule for the purpose of retroactivity under *Teague v. Lane*—at the time the Supreme Court first elevates it to constitutional status, even if the rule is not otherwise new."); *Greenawalt*, 943 F.2d at 1024 ("The Supreme Court's conclusion did

■ Applying *Teague* requires a three-step inquiry. "First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the Court must survey the legal landscape as it then existed and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle." *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (citations, internal quotation marks, and alterations omitted).

■ "A state conviction and sentence become final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Id.* As indicated above, Petitioner's state conviction became final on January 14, 1992, which was the last day on which he could have filed a petition for certiorari.

In Part IV of this opinion, we analyzed the state of the case law as it existed on January 14, 1992. As of that date, the primary landmarks governing the constitutionality of Petitioner's conviction were *McMillan,* 477 U.S. at 79, 106 S.Ct. 2411, and *Lincoln,* 807 F.2d at 805. Neither *Almendarez–Torres,* which initially appeared to extend *McMillan,* nor *Apprendi,* which unambiguously limited *McMillan,* had appeared on the horizon. In light of that backdrop, it cannot be said that a state court considering Petitioner's claim in 1992 would have felt compelled by existing precedent to conclude that his conviction violated the Constitution. At the very least, as a comparison of the *Almendarez–*

*Torres* and *Apprendi* decisions that followed strongly suggests, the constitutional law governing Petitioner's claim was unsettled at the time.

Accordingly, we turn to the third prong of *Teague.* Petitioner will not benefit from the new rule announced in *Apprendi* unless the rule is of the kind that either places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe [or] requires the observance of those procedures that are implicit in the concept of ordered liberty." *Teague,* 489 U.S. at 307, 109 S.Ct. 1060 (citations, internal quotation marks, and ellipses omitted). The first exception identified in *Teague* is plainly inapplicable here, where the state's authority to punish Petitioner for attempted murder is beyond question. *Cf. id.* at 311, 109 S.Ct. 1060 ("Application of the fair cross section requirement to the petit jury would not accord constitutional protection to any primary activity whatsoever."); *Greenawalt v. Ricketts,* 943 F.2d 1020, 1025 (9th Cir.1991) ("This exception is plainly inapplicable here, because *Minnick*'s procedural requirements do not alter the state's authority to prosecute Greenawalt for murder, kidnapping, armed robbery, and theft.").

■ The second exception identified in *Teague* requires the retroactive application of certain "watershed rules of criminal procedure." *Teague,* 489 U.S. at 312, 109 S.Ct. 1060. Retroactive application will occur where both (1) a failure to adopt the new rule "creates an impermissibly large risk that the innocent will be convicted," and (2) "the procedure at issue . . . implicate[s] the fundamental fairness of the trial." *Id.* In order to qualify under this exception, the new rule must do more than systematically enhance the reliability of a criminal proceeding; the rule must be an absolute prerequisite to the trial's fundamental fairness. *See Carriger,* 948 F.2d at 598.

not depend on a survey of all antecedent case law. Rather, the existence of just two prior

decisions reasonably contrary to *Roberson* justified its characterization as a new rule.").

In the case at bar, the *Apprendi* rule, at least as applied to the omission of certain necessary elements from the state court information, is neither implicit in the concept of ordered liberty nor an absolute prerequisite to a fair trial. Certainly, any civilized society will grant a criminal defendant the right "to be informed of the nature and cause of the accusation" against him. U.S. Const. amend. VI. But we need not strain our imaginations too much in order to envision a fundamentally fair trial in the aftermath of a flawed information. Indeed, the facts of the case at bar amply illustrate that the text of an information is not the only means for informing a defendant of the nature and cause of the accusation. Where the defendant has actual notice of the nature and cause of the accusation against him, as well as the possible sentences he might receive, the omission of particular key words from the written information neither increases the risk that an innocent person will be convicted nor hinders the fundamental fairness of the trial. We therefore decline to apply the *Apprendi* rule, insofar as it effects discrepancies between an information and jury instructions, retroactively to Petitioner's claim.

## VII.

■■■■ Because we hold that Petitioner cannot benefit from the recent changes in the law that post-dated the finality of his conviction, we will apply the *McMillan* and *Lincoln* rules then in effect. Under those cases, the omitted charge of premeditation is a mere sentencing factor, rather than an offense element, so it is appropriate to analyze the discrepancy between the information and the jury instruction as a variance. "A variance requires reversal only when the defendant was prejudiced thereby." *United States v. Alvarez,* 972 F.2d 1000, 1004 (9th Cir.1992). Where the defendant is informed of the omitted charge by some means other than the indictment/information well in advance of trial, there is no prejudice to the defendant. *See id.*

In the instant case, it is clear from the record that Petitioner was on notice well before trial that the prosecution sought to prove that he attempted to commit murder deliberately and with premeditation. Petitioner and his counsel believed he was being charged with premeditated attempted murder, and Petitioner's counsel sought to undermine the premeditation charge at trial by arguing that Petitioner would have never given his license to Ibrahim if he had planned on murdering him. The magistrate judge's report noted that "both sides argued the premeditation issue before the jury." It was not until well after trial that Petitioner came to realize that the information had not charged him with premeditated attempted murder. The prosecutor and the trial judge also believed throughout the trial that the information had alleged premeditation. Therefore, the trial that transpired was no different from the trial that would have transpired had the information set out premeditation and deliberation. On these facts, there was no prejudice to Petitioner and the error was harmless.

■■■■ Petitioner argues that had he learned of the actual terms of the information, he could have immediately pled guilty to the offense charged, thereby avoiding a life imprisonment term. Petitioner casts this hypothetical dynamic as proof that he was prejudiced by the error. But had Petitioner sought to plead guilty in order to avoid a life sentence, the prosecution would not have been obligated to accept such a plea. The prosecutor would have amended the information by adding the allegation that Petitioner attempted to murder Ibrahim deliberately and with premeditation. *See Calif. Penal Code* § 1009 ("An ... information may be amended by the district attorney, and an amended complaint may be filed by the prosecuting attorney in any inferior court, without leave of court at any time before the defendant pleads ... The court in which an action is pending may order or permit an amendment of an ... information ... at

any stage of the proceedings."); *see also* Fed. R.Crim. Pro. 7(e) ("The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."). A guilty plea must be knowing and voluntary, not only for the defendant, but for the prosecution as well. Petitioner's claim that he could essentially say "gotcha" and hold the prosecution to its drafting error finds no support in California or federal case law. Confronted with an oversight like the one that occurred in the case at bar, any reasonable trial court judge would have granted the prosecution leave to amend the information. Petitioner's argument that we must not speculate as to what the trial court judge would have done under such circumstances is therefore unpersuasive. The exclusion of premeditation from the information was a variance, and one that did not prejudice Petitioner. Accordingly, there was no reversible error.

## VIII.

■■■ In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test that governs whether a criminal defendant has a claim for constitutionally defective assistance of counsel.[7] "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687, 104 S.Ct. 2052. The district court assumed that trial counsel's performance was deficient in this case, but held that Petitioner's claim failed because he cannot satisfy *Strickland*'s second prong. We agree.

■■■ For the reasons stated above, counsel's unfortunate oversight in failing

to realize the discrepancy between the information and jury instructions did not prejudice Petitioner. Petitioner had actual notice that Respondent would argue premeditation at trial, and presented a trial defense with respect to that sentencing factor. Had Petitioner realized the mistake and attempted to plead guilty in order to avoid a life sentence, the prosecutor would have immediately become aware of his error, and would have amended the information, in accordance with section 1009 of the California Penal Code. Because premeditation was a sentencing factor, rather than an element of an offense, such an amendment would not have been impermissible even if it occurred after jeopardy had attached, as long as the trial court approved it. As we stated above, on the facts of this case, where the trial court itself believed all along that Petitioner had been charged with premeditated attempted murder, the trial court obviously would have allowed such an amendment to the information. Because Petitioner cannot show that he was prejudiced by his counsel's oversight, his claim for ineffective assistance of trial counsel must fail under *Strickland*.[8]

## IX.

For the foregoing reasons, the petition is DENIED.

---

7. Respondent does not dispute that Petitioner exhausted his state remedies on the ineffective assistance claim.

8. Petitioner also alleges ineffective assistance by his counsel on direct appeal for failing to notice the information/conviction discrepan-

cy. Because, for the reasons stated above, the discrepancy was not grounds for reversal, Petitioner was not prejudiced by any failure to raise the issue on direct appeal. *See Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir.1985) ("Failure to raise a meritless argument does not constitute ineffective assistance.").