**UNITED STATES of America, Plaintiff/Respondent,**

v.

**Lupe HERNANDEZ, Defendant/Petitioner.**

No. 3:94CR779.
No. 3:00CV712.

United States District Court, N.D. Ohio, Western Division.

March 30, 2001.

Lupe Hernandez, Lisbon, OH, petitioner pro se.

Deborah Kovac Rump, Office Of The U.S. Attorney, Toledo, OH, for United States of America, respondent.

### OPINION AND ORDER

JOHN W. POTTER, Senior District Judge.

This action is before the Court on Lupe Hernandez's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, the government's reply and supplemental brief and petitioner's response and supplemental brief.

As an initial matter, in § 2255 proceedings, evidentiary hearings are not required when the record conclusively shows

that the petitioner is entitled to no relief. *Blanton v. United States,* 94 F.3d 227, 235 (6th Cir.1996) (citing *Fontaine v. United States,* 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973)). Because the record in this case conclusively shows that petitioner is not entitled to relief, the Court finds that an evidentiary hearing is not needed. Rule 8 of the Rules Governing § 2255 Proceeding. For the reasons hereinafter stated, the § 2255 motion will be denied.

 In order for petitioner to prevail under § 2255 on the basis of a nonconstitutional error, the record must reflect a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley,* 512 U.S. 339, 114 S.Ct. 2291, 2300, 129 L.Ed.2d 277 (1994); *United States v. Todaro,* 982 F.2d 1025, 1028 (6th Cir.1993). In order to obtain relief under § 2255 on the basis of a constitutional error, the record must reflect an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *United States v. Ross,* 40 F.3d 144, 146 (7th Cir. 1994).

Hernandez and eight co-defendants were indicted on December 7, 1994, in a six count indictment. Hernandez was charged in Count 1 with conspiracy to possess and distribute heroin, cocaine and marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846; in Count 2 with conspiracy to import heroin and marijuana from a place outside the United States, in violation of 21 U.S.C. §§ 960(a)(1) and 963; in Count 3 with conspiracy to launder the proceeds, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (b)(1) and (g); and in Count 6 with a forfeiture count pursuant to 21 U.S.C. § 853. On October 12, 1995,

Hernandez pled guilty pursuant to an oral plea agreement to each count in which he was charged. Five of his co-defendants had previously pled guilty and had agreed to testify against him. After a lengthy sentencing hearing, Hernandez was sentenced on August 26, 1997 to 264 months imprisonment on Counts 1 and 2 and 240 months imprisonment on Count 3, to run concurrently.

Hernandez appealed his conviction and sentence, challenging the validity of his plea, based in part on a claim of ineffective assistance of counsel, and the calculation of his sentence. Specifically, he argued that his guilty plea was not knowingly and voluntarily made due to the fact that he believed the government had agreed not to forfeit two residences per his request and that a comment of counsel led him to believe that he would receive no more than 21 years imprisonment. In addition, he argued that the plea agreement was breached when he was sentenced to 22, rather than 21, years in prison and that this Court erred in several respects in calculating his sentence. The Court of Appeals rejected petitioner's arguments and affirmed his conviction and sentence.

Hernandez raises the following grounds for relief in his motion to vacate sentence: (1) the government violated two provisions of the oral plea agreement; (2) he received ineffective assistance of trial counsel; and (3) he received ineffective assistance of appellate counsel. In addition, the Court requested supplemental briefs on the applicability in this case of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

 In his first ground for relief, petitioner attempts to challenge his guilty plea by arguing that the government violated the terms of an oral plea agreement, namely, that the government would not object to sentencing at the low end of the

guidelines and that it would not forfeit two residences as requested by petitioner. However, a federal prisoner may not relitigate in a § 2255 motion to vacate sentence claims that were raised and considered on direct appeal. *See United States v. Jones,* 918 F.2d 9, 10 (2d Cir.1990); *Barton v. United States,* 791 F.2d 265, 267 (2d Cir. 1986). A federal prisoner is further barred from asserting claims that could have been brought on direct appeal, absent a showing of cause and prejudice for the failure to bring those claims. *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

The Court of Appeals specifically addressed on direct appeal petitioner's argument as it relates to the forfeiture of certain real property and, in essence, found that the criminal forfeiture in this case was consistent with the government's representations at the plea hearing. *United States v. Hernandez,* 182 F.3d 919 (Table), 1999 WL 486620, *4 (6th Cir. July 1, 1999). The Court of Appeals stated as follows:

> The government could both guarantee two terms (no objection to a reduction and to a sentence at the low end) and promise nothing more than a good-faith effort regarding a third term (forfeiture). Hernandez's comments at the hearing suggest that he realized the difference. Near the end of the hearing, the court asked, "Have any promises, other than what Ms. Rump stated, about a two-level reduction, have any other promises been made to cause you to change your pleas?" Hernandez responded, "Just not—to the low end of the guidelines."

*Id.* Thus, petitioner may not relitigate this issue in the instant motion.

Petitioner's claim that the government violated its agreement not to object to sentencing at the low end of the guidelines could have been, but was not, raised on direct appeal. To the extent that petitioner argues ineffective assistance of appellate counsel as cause for this default, for the reasons set forth later in the opinion, the Court finds the argument not well taken. Because he has failed to demonstrate cause or actual prejudice, petitioner is barred from asserting this claim in this § 2255 motion.

▓▓▓▓ In his second ground for relief, petitioner contends that he received ineffective assistance of trial counsel.[1] A petitioner alleging ineffective assistance of counsel must show both that counsel's performance was deficient and that this deficient performance prejudiced the defense so as to render the proceeding unfair and the result unreliable. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to show that counsel's performance was deficient, petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* at 688, 104 S.Ct. 2052. In the guilty plea context, in order to show that counsel's performance was sufficiently prejudicial, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Sparks v. Sowders,* 852 F.2d 882, 884 (6th Cir.1988) (citing *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *Ludwig v. United States,* 162 F.3d 456, 458 (6th Cir.1998).

Petitioner first contends that trial counsel rendered ineffective assistance in representing to him that the government would not object to sentencing at the low end of the guidelines. However, counsel was clearly justified in making this repre-

---

1. The Court notes that petitioner retained new counsel for purposes of sentencing.

sentation since the government explicitly so stated at the plea hearing.

Petitioner next argues that he would not have pled guilty had counsel not represented to him that certain real estate would not be forfeited. However, even if counsel's alleged representation was constitutionally deficient, which the Court does not so find, petitioner has failed to demonstrate that he was prejudiced. As noted above, the Court of Appeals found that petitioner's comments at the plea hearing indicate that he realized that the government made no such promise as a term of his plea agreement and that no such promise caused him to change his plea.

■ Petitioner also argues that counsel filed no pre-trial motions for discovery, thereby allegedly failing to conduct an independent investigation of the case. Petitioner contends that, had counsel conducted such discovery, he would have been able to determine whether "a plausible line of defense existed ... or whether to negotiate a plea agreement." Petition, p. 16. He further contends that counsel's failure to investigate also affected sentencing counsel's performance in that he failed to call any witnesses to rebut the government's witness regarding relevant conduct. Petition, pp. 17, 19. However, petitioner does not note any potential defenses that counsel failed to uncover, nor does he indicate any potential witness testimony that would rebut testimony offered by the government regarding relevant conduct. The Court notes that counsel thoroughly cross-examined the government's sole witness with respect to relevant conduct and prepared a sentencing brief on the issue as well.[2] Furthermore, counsel did in fact file several pre-trial motions, including a motion for bill of particulars, motion for order to preserve investigative notes and tapes, motion for notice of other crimes, and motion for release of Giglio materials. In any event, the mere fact that a motion for discovery was not filed by a particular defendant does not mean that counsel failed to investigate the facts of the case.[3] The Court finds that petitioner has not demonstrated that counsel's performance was constitutionally deficient, nor has he demonstrated a reasonable probability that he would not have pled guilty or that he was prejudiced in any way.

■ Petitioner next argues that trial counsel was ineffective in failing to obtain a written plea agreement. However, the Court finds this argument without merit. Petitioner pled guilty to all counts in which he was charged. The only agreement made by the government was to not object to a two-level reduction for acceptance of responsibility and to not object to sentencing at the low end of the guideline range. This agreement was set forth on the record at the plea hearing and was confirmed by petitioner at that hearing. Doc. # 153, pp. 13, 20. Petitioner has failed to satisfy either prong of the *Strickland* analysis.

Petitioner also contends that trial counsel was ineffective "in informing him that no adverse consequences would befall him from the debriefing process engaged in with the government." Petition, p. 20. However, petitioner fails to indicate what occurred at the "debriefing" or how that occurrence adversely affected him. Thus, the Court finds petitioner's argument without merit.

---

**2.** As a result of sentencing counsel's efforts, petitioner was found responsible for 26,451 kilograms of marijuana and its equivalents, whereas the government argued that he was responsible for 33,805 kilograms.

**3.** The Assistant United States Attorney in this case indicated that petitioner's trial counsel spent several hours interviewing the agents assigned to the case and reviewing the documents seized as evidence.

■ Petitioner also argues that appellate counsel rendered ineffective assistance because his argument did not include all aspects of the oral plea agreement and he failed to argue that the plea agreement was between petitioner and the government. The Court of Appeals opinion clearly indicates that there was no confusion as to whom were parties to the plea agreement. To the extent that petitioner is arguing that counsel should have raised additional arguments regarding his plea agreement, the Court finds his argument without merit. Appellate counsel is not ineffective simply because he or she decides not to raise every possible argument on appeal. *Wright v. United States*, 182 F.3d 458, 466 (6th Cir.1999) citing *Jones v. Barnes*, 463 U.S. 745, 751–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 ("A brief that raises every colorable issue runs the risk of burying good arguments"). Counsel not only raised several issues relating to his guilty plea, but also sentencing issues regarding drug quantity and whether petitioner acted as an organizer or leader of the conspiracy. Petitioner has failed to demonstrate that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

The Court next addresses the issue of the applicability of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to the case sub judice. In *Apprendi*, the defendant challenged a New Jersey sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant committed the underlying crime with a purpose to intimidate a person or group because of race. *Apprendi*, 120 S.Ct. at 2351. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63. The Court explained that in determining whether a factual finding is an essential element of the offense or merely a sentencing factor, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.* at 2365.

■ In the case *sub judice*, defendant pled guilty to two drug conspiracy counts under 21 U.S.C. §§ 846 and 963, as well as to a money laundering conspiracy count. Contrary to the government's contention, none of these counts alleged a specific quantity of drugs.[4] Sections 841 and 960 set forth the maximum penalties

---

4. The government incorrectly contends that petitioner's plea to the drug conspiracy charges admits the conduct alleged in the overt acts, which included allegations of specific amounts of drugs. However, a guilty plea serves only as an "admission of all the elements of a formal charge." *United States v. Skinner*, 25 F.3d 1314, 1316 (6th Cir.1994) (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)). A conviction on drug conspiracy charges brought pursuant to §§ 846 and 963 does not require proof of any overt acts. *See, e.g., United States v. Myers*, 102 F.3d 227, 235 (6th Cir.1996) (citing *United States v. Shabani*, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994)); *United States v. Rodriguez*, 215 F.3d 110, 118 (1st Cir.2000). "[T]he criminal agreement itself is the *actus reus*." *Shabani*, 513 U.S. at 16, 115 S.Ct. 382. Thus, petitioner's guilty plea does not constitute an admission of the overt acts since the overt acts are not elements of the drug conspiracy charges. *See United States v. Cazares*, 121 F.3d 1241, 1247 (9th Cir.1997) ("allegations not necessary to be proved for a conviction—in this case the overt acts—are not admitted by a plea"). Furthermore, the plea colloquy did not include an admission of any particular quantity of drugs.

applicable to petitioner's convictions under §§ 846 and 963. Sections 841(b)(1)(C) and 960(b)(3) provide for a maximum penalty of 240 months unless the crime involves a quantity of drugs as set forth in other subsections of those statutes. Sections 841(b)(1)(A) and 960(b)(1) provide, in relevant part, for a minimum penalty of 10 years and a maximum penalty of life imprisonment if the crime involved at least 1 kilogram of heroin, 5 kilograms of cocaine, or 1000 kilograms of marijuana. Sections 841(b)(1)(B) and 960(b)(2) provide, in relevant part, for a minimum penalty of 5 years and a maximum penalty of 40 years if the crime involved at least 100 grams of heroin, 500 grams of cocaine, or 100 kilograms of marijuana.

After a lengthy sentencing hearing, this Court determined, by a preponderance of the evidence, that petitioner was responsible for a total of 26,451 kilograms of marijuana and its equivalents, as converted under the Sentencing Guidelines. Specifically, petitioner was found responsible for 2,632.7 kilograms of marijuana, 93 kilograms of cocaine, and 5.218 kilograms of heroin. Based on these drug quantities, petitioner faced a statutory mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment on the drug conspiracy counts. 21 U.S.C. §§ 841(b)(1)(A), 960(b)(1). Petitioner was sentenced to 264 months imprisonment on these counts.

Because petitioner's guilty plea did not address any quantity of drugs involved in the conspiracies, it supports a conviction under the catch-all provisions of §§ 841(b)(1)(C) and 960(b)(3) only and not under those subsections that provide for maximum penalties greater than 240 months. Thus, relying on the holding in *Apprendi*, petitioner alleges in his supplemental brief the following additional grounds for relief: (1) the Court's determination of drug amounts by a preponder-ance of the evidence in order to enhance his sentence beyond the maximum penalty of 20 years is prohibited under *Apprendi*; (2) every count on which petitioner was convicted is "condemned by *Apprendi*"; (3) § 841 is unconstitutional under *Apprendi*; (4) any quantity of a drug must be pleaded and proven beyond a reasonable doubt, not just amounts that affect the maximum sentence; and (5) appellate counsel was ineffective for failing to raise the foregoing claims. Petitioner's Supplemental Brief, pp. 27, 31, 33, 36, 39.

■ Initially, the Court rejects petitioner's argument that appellate counsel was ineffective in failing to raise any claims under *Apprendi*. *Apprendi* was decided well after the conclusion of petitioner's direct appeal. Counsel's performance did not fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052. Furthermore, as explained later in this opinion, petitioner was not prejudiced by counsel's failure to argue any *Apprendi* issues on appeal.

■ As to petitioner's remaining *Apprendi* arguments, the Court must, as a threshold matter, determine whether *Apprendi* may be applied retroactively to cases on collateral review. In *Teague v. Lane*, 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court stated that as a general rule, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." The Court has recognized two exceptions to this rule. First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. Second, a new rule should be applied retroactively if it "requires the ob-

servance of those procedures that are implicit in the concept of ordered liberty." *Id.* (citations omitted). However, the Supreme Court explained that *Teague* only applies if the case announces a new procedural rule; it is inapplicable if the new case involves the substantive construction of a criminal statute. *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Murr v. United States*, 200 F.3d 895, 905 (6th Cir.2000). Thus, this Court must first determine whether *Apprendi* involves matters of substantive law or whether it announces a new rule of criminal procedure.

In *Apprendi*, the question presented was "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense ... be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 120 S.Ct. at 2351. As explained by the Sixth Circuit, the Court's holding in resolution of this question is basically two-fold.:

> *First,* that courts must count any "fact" that increases the "penalty beyond the prescribed statutory maximum" as an element of the offense "except for one important exception," *i.e.,* "the fact of a prior conviction;" and *second,* that it "is unconstitutional for a legislature" to treat "facts that increase the prescribed range of penalties to which a criminal defendant is exposed" as mere sentencing factors, rather than facts to be established as elements of the offense.

*United States v. Ramirez*, 242 F.3d 348 (6th Cir.2001).

With respect to the first prong of the holding, the Supreme Court clarified the difference between an "element of the offense" and a "sentencing factor." It noted that historically "facts that exposed a defendant to a punishment greater than that otherwise legally prescribed were by defi-

nition 'elements' of a separate legal offense." *Apprendi*, 120 S.Ct. at 2359. The Court recognized that "[w]hen a judge's finding based on a mere preponderance of the evidence authorizes an increase in the maximum punishment, it is appropriately characterized as 'a tail which wags the dog of the substantive offense.'" *Id.* at 2365. Thus, it stated that "merely because the state legislature placed its hate crime sentence 'enhancer' within the sentencing provisions of the criminal code 'does not mean that the finding of a biased purpose to intimidate is not an essential element of the offense.'" *Id.* Due to the elemental nature of facts that expose a defendant to a greater punishment than that authorized by a jury's guilty verdict, the Court concluded that such facts must be submitted to a jury and found beyond a reasonable doubt. *Id.* at 2363, 2365.

The fact that the Supreme Court engaged in such deliberations in order to arrive at its conclusion clearly indicates the substantive nature of its decision. In *Bousley,* the Supreme Court considered the retroactivity of its decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which interpreted the meaning of "using" a firearm in violation of 18 U.S.C. § 924(c). The Court found *Teague* inapplicable to *Bailey* since that decision construed the meaning of a criminal statute and was, thus, substantive in nature. *Bousley, 118 S.Ct.* at 1610. Although *Apprendi* was decided in the context of New Jersey's hate crimes statute, its holding was not limited to that statute. Rather, *Apprendi's* holding encompasses a substantive construction, based on constitutional law, of any statute that treats facts that increase the penalty for a crime beyond the prescribed statutory maximum as a sentencing factor rather than as an element of the crime. Several courts, including the Sixth Circuit, have recognized that *Apprendi* has clarified the essential elements of an offense in viola-

tion of § 841 or a conspiracy to violate § 841. *See e.g., United States v. Flowal,* 234 F.3d 932, 938 (6th Cir.2000) (recognizing that, under *Apprendi,* the provisions of § 841 set forth three separate offenses, rather than one offense with three different penalties); *United States v. Rebmann,* 226 F.3d 521, 524–25 (6th Cir.2000) (finding that, in light of *Apprendi,* facts that increase the maximum penalty for a violation of 21 U.S.C. § 841(a)(1) are elements of the offense); *Burton v. United States,* 237 F.3d 490 (5th Cir.2000) (same); *United States v. Henderson,* 105 F.Supp.2d 523, 535 (S.D.W.Va.2000) (same). In light of the foregoing, this Court concludes that *Apprendi* involves a substantive change in the law and, as such, should apply retroactively. *See Darity v. United States,* 124 F.Supp.2d 355, 360–361 (W.D.N.C.2000) (finding *Apprendi* is a substantive decision to which *Teague's* retroactivity rules do not apply); *but see Ware v. United States,* 124 F.Supp.2d 590, 595–96 (M.D.Tenn. 2000) (finding *Apprendi* merely imposes procedural safeguards and, therefore, applying *Teague* in finding *Apprendi* is not retroactive).

Nevertheless, the Court notes that most courts that have addressed the retroactivity of *Apprendi* have found that it is not retroactive, having applied *Teague* after finding without discussion that the decision announced a constitutional rule of criminal procedure. *See, Jones v. Smith,* 231 F.3d 1227, 1236 (9th Cir.2000); *United States v. Latney,* 131 F.Supp.2d 31 (D.D.C.2001); *Panoke v. United States,* —— F.Supp.2d ——, 2001 WL 46941 (D.Hawai'i 2001); *United States v. Johnson,* 126 F.Supp.2d 1222 (D.Neb.2000); *Klein v. United States,* 125 F.Supp.2d 460, 467 (D.Wyo.2000); *United States v. Gibbs,* 125 F.Supp.2d 700, 703 (E.D.Pa.2000); *West v. United States,*

123 F.Supp.2d 845, 846 (D.Md.2000); *United States v. Pittman,* 120 F.Supp.2d 1263, 1267 (D.Or.2000). Because the second prong of *Apprendi's* holding deals with the proper procedure in making factual determinations that increase the maximum sentence to which a defendant is exposed, this Court also considers the decision in light of *Teague.*

Because the nonretroactivity rules of *Teague* apply only to "new" rules of criminal procedure, the Court must first determine whether the rule in question, if considered a rule of criminal procedure, is a new rule. Even if the Court determines that it is a new rule, it may still be applied retroactively if it falls within one of the two narrow exceptions to the nonretroactivity principle. *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). Although petitioner argues that *Apprendi* did not announce a new rule, as defined in *Teague,* a rule is new if it "breaks new ground or imposes a new obligation on the States or the Federal Government" or, put differently, if "the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. The holding in *Apprendi* was not dictated by precedent and clearly imposes a new obligation on the government to prove certain facts to a jury beyond a reasonable doubt when, prior to *Apprendi,* it needed only to prove such facts to a judge by a preponderance of the evidence. Thus, the Court concludes that *Apprendi* announces a new rule under *Teague.* As such, it may not be applied retroactively unless it falls within one of the two exceptions set forth in *Teague.* The government contends, without further argument or citation of authority, that neither exception applies.[5]

---

5. Although the government cites several cases for the proposition that "the circuit courts of appeal that have heard this issue

have declined to apply [*Apprendi*] to cases on collateral review," Respondent's Supplemen-

■ The first exception requires that a new rule be applied retroactively if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague*, 489 U.S. at 307, 109 S.Ct. 1060. *Apprendi* does not fall under this exception. A second exception exists if the new rule .is a "watershed rule of criminal procedure" that implicates the fundamental fairness of the criminal proceeding. *Id.* at 311–12, 109 S.Ct. 1060. In order to fall within this exception, the new rule "must not only improve the accuracy [of a criminal proceeding], but also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (citations omitted). The Courts that have addressed the applicability of this exception to *Apprendi* have reached different conclusions.

The Ninth Circuit is the only circuit court that has addressed the issue. In *Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000), the court declined to apply *Apprendi* retroactively, finding that it did not fall within the second exception under *Teague*. However, the court's holding was limited to the facts of that case. In *Jones*, the court considered California's treatment of premeditation as a sentencing factor rather than as an element of attempted murder. As a sentencing factor, premeditation was not alleged in the information charging the petitioner with attempted murder.

Under California law, the absence of premeditation meant the difference between first and second degree murder. Nevertheless, at trial, both the prosecution and the defense argued before the jury the issue of whether the petitioner acted with premeditation, and the court instructed the jurors to decide whether the attempted murder was premeditated. The jury found the petitioner guilty and found that he had acted with premeditation. *Jones*, 231 F.3d at 1230. The petitioner's habeas claim was based on the variance between the crime alleged in. the information and the charge actually submitted to the jury. Although the court recognized that *Apprendi* called into question California's treatment of premeditation as a sentencing factor, it found that

> [w]here the defendant has actual notice of the nature and cause of the accusation against him, as well as the possible sentences he might receive, the omission of particular key words from the written information neither increases the risk that an innocent person will be convicted nor hinders the fundamental fairness of the trial.

*Id.* at 1238. Thus, the court found that *Apprendi* should not be retroactively applied "insofar as it effects discrepancies between an information and jury instructions. . . ." *Id.*

Significantly, however, *Jones* did not address issues directly raised in *Apprendi*, namely, the validity of a sentence that was

tal Reply, p. 4, all but one of the cases cited involved a second or successive petition. Those courts reasoned that the language in § 2255 regarding successive petitions mandates that the Supreme Court actually hold that a new rule is retroactive before it can be applied retroactively by lower courts. *See Sustache–Rivera v. United States*, 221 F.3d 8 (1st Cir.2000); *Talbott v. Indiana*, 226 F.3d 866 (7th Cir.2000); *Rodgers v. United States*, 229 F.3d 704 (8th Cir.2000); *United States v. Falls*, 2000 WL 1610733 (8th Cir.2000); *In*

*re Joshua*, 224 F.3d 1281 (11th Cir.2000). The government has not cited, and the Court is not aware of, any authority extending the holdings of those decisions to an initial § 2255 petition. The sole case cited by the government that did not involve a successive petition, involved a habeas petition filed pursuant to § 2254. In that case, the Court did not decide the retroactivity issue but, rather, found that the claim was procedurally defaulted. *Scott v. Baldwin*, 225 F.3d 1020, 1023 n. 7 (9th Cir.2000).

enhanced beyond the prescribed statutory maximum based on facts decided by a judge under a preponderance of the evidence standard.[6] A number of district courts that have addressed this issue have declined to apply *Apprendi* retroactively, finding that the rule in *Apprendi* does not increase the accuracy of the proceeding or implicate fundamental fairness. *See Panoke v. United States,* —— F.Supp.2d ——, 2001 WL 46941 (D.Hawai'i 2001); *United States v. Latney,* 131 F.Supp.2d 31 (D.D.C. 2001); *Klein v. United States,* 125 F.Supp.2d 460, 467 (D.Wyo.2000); *United States v. Gibbs,* 125 F.Supp.2d 700, 706 (E.D.Pa.2000); *United States v. Johnson,* 126 F.Supp.2d 1222, 1225–26 (D.Neb.2000); *West v. United States,* 123 F.Supp.2d 845 (D.Md.), *aff'd on other grounds,* 2001 WL 208508 (4th Cir.2001) (affirmed on ground that *Apprendi* claim was procedurally defaulted); *United States v. Pittman,* 120 F.Supp.2d 1263, 1270 (D.Or.2000); *Ware v. United States,* 124 F.Supp.2d 590, 598–600 (M.D.Tenn.2000). Two courts, however, have concluded that *Apprendi* falls within the second Teague exception and should, therefore, be applied retroactively. *Darity,* 124 F.Supp.2d 355, 358–61 (W.D.N.C. 2000); *United States v. Murphy,* 109 F.Supp.2d 1059 (D.Minn.2000).

This Court disagrees with the reasoning of the courts that have concluded that the *Apprendi* rule does not increase the accuracy of a conviction or sentence. In *Apprendi,* the Supreme Court recognized that the " 'reasonable doubt' requirement 'has a vital role in our criminal procedure for cogent reasons' " relating to accuracy.

*Apprendi,* 120 S.Ct. at 2359 (quoting *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). The Court explained:

> We thus require this, among other procedural protections in order to "provid[e] concrete substance for the presumption of innocence," and to reduce the risk of imposing such deprivations erroneously. If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have until than point, unquestionably attached.

*Id.* (internal citations omitted). As indicated earlier in this opinion, prior to *Apprendi* the finding of certain facts that exposed a defendant to a sentence beyond the maximum penalty imposed by statute was made by a judge under a preponderance of the evidence standard. This Court must conclude that requiring these facts to be determined beyond a reasonable doubt will have a profound impact on the accuracy of the proceedings, thus, implicating the fundamental fairness of the proceedings.[7] To conclude otherwise trivializes the importance and purpose of that standard.

The Court not only finds that the rule in *Apprendi* increases the accuracy of the criminal proceedings, but also finds that it

---

**6.** In *Apprendi,* the Court specifically noted that the defendant had not asserted a constitutional claim based on the omission of any reference to sentence enhancement factors in the indictment and that it does not separately address the indictment question. *Apprendi,* 120 S.Ct. at 2356, n. 3.

**7.** This Court further notes that evidence of such facts, formerly considered sentencing factors, was not subject to the Federal Rules of Evidence. *See* Fed.R.Evid. § 1101(d)(3); *United States v. Davis,* 170 F.3d 617, 622 (6th Cir.1999). As such, hearsay evidence was permitted, which also implicates the defendant's Sixth Amendment right to confront and cross-examine witnesses.

"alter[s] our understanding of the *bedrock procedural elements* essential to the fairness of a criminal proceeding." *Sawyer*, 497 U.S. at 242, 110 S.Ct. 2822. In making this determination, the Court finds the language used by the Supreme Court in *Apprendi* telling:

> At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without "due process of law," Amdt. 14, and the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury," Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt."

*Apprendi*, 120 S.Ct. at 2355–56. That the reasonable doubt standard is a "bedrock procedural element essential to the fairness of a criminal proceeding," was made clear by the Supreme Court in *In re Winship:*

> The reasonable-doubt standard plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law." *** "[A] person accused of a crime ... would be at a severe disadvantage, a disadvantage amounting to a lack of fundamental fairness, if he could be adjudged guilty and imprisoned for years on the strength of the same evidence as would suffice in a civil case."
>
> \* \* \* \* \* \*
>
> [T]he reasonable-doubt standard is indispensable, for it "impresses on the tri-er of fact the necessity of reaching a subjective state of certitude of the facts in issue."

*In re Winship*, 397 U.S. at 363–64, 90 S.Ct. 1068 (internal citations omitted). *Apprendi* clearly altered our understanding of this "bedrock procedural element" by requiring that it be applied to certain facts that previously were subject to a preponderance of the evidence standard only. As Justice O'Connor noted, the *Apprendi* decision "will surely be remembered as a watershed change in constitutional law." *Apprendi*, 120 S.Ct. at 2380 (O'Connor, J., dissenting).

In light of the foregoing, this Court concludes that the rule set forth in *Apprendi* should be applied retroactively to timely, initial habeas petitions either as a substantive change in the law or as a new rule of criminal procedure that falls within the second *Teague* exception.

 Nevertheless, there are additional procedural hurdles that petitioner must clear before the Court may consider his *Apprendi* claims. Petitioner's *Apprendi* claims were not raised on direct appeal. A § 2255 motion cannot be used as a substitute for direct appeal. *United States v. Addonizio*, 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Failure to raise a ground for relief on direct appeal results in a waiver of that ground unless the petitioner can show cause to excuse his failure to appeal and actual prejudice, or actual innocence. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. January 7, 2000).

As cause for procedurally defaulting his claims, petitioner first contends that the factual and legal basis for his *Apprendi* claims were not available during his ap-

peal. While it is true that a claim that is " 'so novel that its legal basis is not reasonably available to counsel' may constitute cause for a procedural default," *Bousley*, 118 S.Ct. at 1611 (internal citation omitted), petitioner's claim does not so qualify. *Apprendi*-like arguments were not novel and have for years been argued on appeal. *See e.g., United States v. Dorlouis*, 107 F.3d 248, 252 (4th Cir.1997); *United States v. Rigsby*, 943 F.2d 631, 640–43 (6th Cir.1991) (discussing *Apprendi*-like arguments with approval but finding that precedent required that the argument be rejected) (cited by petitioner); *United States v. Vera*, 894 F.2d 410 (Table), 1990 WL 4727 *2–3 (9th Cir.1990); *United States v. Wood*, 834 F.2d 1382, 1389 (8th Cir.1987); *United States v. Crockett*, 812 F.2d 626, 629 (10th Cir.1987); *United States v. Alvarez*, 735 F.2d 461, 468 (11th Cir.1984). Moreover, nearly three months before the Court of Appeals' issued its opinion in petitioner's case, the Supreme Court decided *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), wherein the Court set forth in dicta the rule that it, in essence, adopted as its holding in *Apprendi*.

▮ Petitioner also attempts to demonstrate cause by arguing that any attempt to raise his *Apprendi* claims on appeal would have been futile given the precedent in the Sixth Circuit. However, the Supreme Court rejected a similar argument in *Bousley*, stating that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' " *Bousley*, 118 S.Ct. at 1611 (quoting *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

▮ Even if petitioner could show cause for his default, the Court finds that he is unable to demonstrate actual prejudice. Applying *Apprendi* to this case, the Court was limited to statutory maximum penalties of twenty years on each of the two drug conspiracy counts. For sentencing purposes, the drug conspiracy counts were grouped, and petitioner was sentenced to a term of 264 months. Generally, grouped counts are to be served concurrently. However, U.S.S.G. § 5G1.2(d) provides that "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." Thus, applying this provision of the Sentencing Guidelines, petitioner's term of imprisonment would remain unchanged. *See United States v. Page*, 232 F.3d 536, 544–45 (6th Cir.2000); *United States v. Henderson*, 105 F.Supp.2d 523, 536–37 (S.D.W.Va.2000).

Finally, petitioner has failed to establish his actual innocence; that is, that "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 118 S.Ct. at 1611. Accordingly, petitioner's *Apprendi* claims are not well taken.

Further, for the foregoing reasons, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, *see* Fed.R.App.P. 24(a), and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R.App.P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1603–4, 146 L.Ed.2d 542 (2000); *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063, 1073 (6th Cir.1997).

THEREFORE, for the foregoing reasons, good cause appearing, it is

ORDERED that the motion to vacate, set aside, or correct sentence be, and hereby is, DENIED; and it is

FURTHER ORDERED that petitioner is denied a certificate of appealability; and it is

FURTHER ORDERED that petitioner is denied leave to file an appeal in *forma pauperis*.