

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-21-2001

# In Re:Carnell Turner

Precedential or Non-Precedential:

Docket 00-2660

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation
"In Re:Carnell Turner" (2001). *2001 Decisions.* Paper 215.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/215

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 21, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-2660

IN RE: CARNELL TURNER,
        Petitioner

On Petition for Leave to File Second or Successive
Petition under 28 U.S.C. S 2255, with Respect to the
Judgment in the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 95-cr-00296)
District Judge: Honorable James McGirr Kelly

Argued July 16, 2001

Before: MANSMANN,* SCIRICA and
RENDELL, Circuit Judges.

(Filed: September 21, 2001)

        Peter Goldberger, Esq. [ARGUED]
        Law Office of Peter Goldberger
        50 Rittenhouse Place
        Ardmore, PA 19003-2276
         Counsel for Petitioner

        Robert A. Zauzmer, Esq. [ARGUED]
        Office of the U.S. Attorney
        615 Chestnut Street
        Philadelphia, PA 19106
         Counsel for Respondent

_____
* Via video conference.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Carnell Turner seeks our permission to file a second habeas corpus application in the Eastern District of Pennsylvania in an attempt to vacate his 1996 sentence for crack cocaine distribution and conspiracy to distribute crack cocaine. Turner's proposed habeas corpus application invokes the new rule of constitutional law announced by the Supreme Court in Apprendi v. New Jersey, 530 U.S. 446 (2000). The legal issue presented by this case is whether the new rule found in Apprendi has been "made retroactive to cases on collateral review by the Supreme Court," such that Turner may file a second habeas corpus application in the District Court. Following the Supreme Court's recent pronouncements in Tyler v. Cain , 121 S. Ct. 2478 (2001), we hold that Apprendi has not been "made retroactive to cases on collateral review by the Supreme Court," and accordingly will deny Turner permission to file a second application.

I.

According to the Antiterrorism and Effective Death Penalty Act of 1996, a second or successive habeas corpus application filed by a federal prisoner like Turner:

> [M]ust be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--
>
> . . .
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. S 2255 P8. Section 2244 certification to which this provision refers is described in S 2244(b)(3), which sets forth the procedures and standards for applications in the court of appeals. Under these standards, Turner must make "a prima facie showing that the application satisfies the requirements" of subsection S 2244. Id. S 2244(b)(3)(C).

Therefore, reading S 2255 P in conjunction with S 2244, Turner must make a "prima facie showing" that his habeas corpus application contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," in order for us to grant him permission to file his application in the district court. See generally Reyes-Requena v. United States, 243 F.3d 893, 897-99 (5th Cir. 2001) (discussing the interplay between S 2255 and S 2244).

## II.

Turner's application contains an Apprendi claim. In Apprendi, the Supreme Court held, for the first time, that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi , 530 U.S. at 490. For purposes of this opinion, we need not address the intricacies of Apprendi, but suffice it to say that the case has generated quite a stir in the legal community, and has important implications for the conduct of criminal trials and sentencing. See, e.g., id. at 524 (O'Connor, J., dissenting) (stating that Apprendi "will surely be remembered as a watershed change in constitutional law"); United States v. Mack, 229 F.3d 226, 236 (3d Cir. 2000) (Becker, C.J., concurring) (noting that Apprendi 's implications have generated "enormous controversy," and that Apprendi claims may "reach tidal proportions"). It is not surprising, then, that the parties agree that Apprendi establishes "a new rule of constitutional law." They also agree that this new rule was "previously unavailable" to Turner, because it was announced more than a year after his first S 2255 motion was decided.1

_____

1. At the time of his first S 2255 filing, Apprendi's "new rule" was also "previously unavailable" to Turner in the sense that the Apprendi argument that he now advances in his second application was foreclosed by a large body of settled precedent. In other words, whenever a Supreme Court decision, like Apprendi, "marks a `clear break with the past,' " that rule " `will almost certainly have been' previously unavailable
in the requisite sense." Tillman v. Cook, 215 F.3d 1116, 1122 (10th Cir. 2000) (quoting Reed v. Ross, 468 U.S. 1, 17 (1984)).

Therefore, the only issue we need decide is whether Turner can make a prima facie showing that Apprendi has been "made retroactive to cases on collateral review by the Supreme Court."[2] Fortuitously, the Supreme Court's recent decision in Tyler greatly simplifies this inquiry, and dictates our response. In Tyler, which overruled our earlier decision in West v. Vaughn, 204 F.3d 53 (3d Cir. 2000), the Court explained that a new rule is not "made retroactive to cases on collateral review" unless the Court itself holds it to be retroactive. Tyler, 121 S. Ct. at 2482. As the Court explained:

> The Supreme Court does not "make" a rule retroactive when it merely establishes principles of retroactivity and leaves the application of those principles to lower courts. In such an event, any legal conclusion that is derived from the principles is developed by the lower court (or perhaps by a combination of courts), not by the Supreme Court.

Id.

The government correctly points out that no Supreme Court case specifically holds that Apprendi is retroactive on collateral review, because the Court has yet to consider that precise question. The government concludes that under Tyler, this alone means that we must dismiss Turner's

_____

2. The government also maintains that in order for us to grant Turner's motion, he must make a "prima facie" showing that he has a meritorious Apprendi claim in the first place. Turner disputes this requirement, arguing that we need not, and should not, engage the merits of his claim at this point, but leave that task for the District Court. Although the government fails to identify any specific language in the statute that would support its interpretation, this interpretation apparently enjoys some support in the courts of appeals. E.g., Reyes-Requena v. United States, 243 F.3d 893,899 (5th Cir. 2001) (stating that a prima facie showing means "a sufficient showing of possible merit to warrant a fuller exploration by the district court") (quoting Bennett v. United States, 119 F.3d 468, 469 (7th Cir. 1997)). We need not rule on this issue, however, because even if we assume that Turner need not make a prima facie showing of a meritorious Apprendi claim at this stage, he still must make a prima facie showing that Apprendi has been"made retroactive to cases on collateral review by the Supreme Court," a requirement that he cannot satisfy. Infra pp. 7-9.

4

petition, because only the Supreme Court itself can"make"
a case retroactive on collateral review.

The government's interpretation of Tyler, however, is
overly simplistic.3 Justice O'Connor, who supplied the
crucial fifth vote for the majority, wrote a concurring
opinion, and her reasoning adds to our understanding of
the impact of Tyler. She explains that it is possible for the
Court to "make" a case retroactive on collateral review
without explicitly so stating, as long as the Court's holdings
"logically permit no other conclusion than that the rule is
retroactive." Id. at 2486 (O'Connor, J., concurring). In other
words, contrary to the government's position, just because
the Court has never specifically considered the retroactivity
of Apprendi does not foreclose the possibility that the Court
has "made" Apprendi retroactive on collateral review.

For example, Justice O'Connor explained that:

> [I]f we hold in Case One that a particular type of rule
> applies retroactively to cases on collateral review and
> hold in Case Two that a given rule is of that particular
> type, then it necessarily follows that the given rule
> applies retroactively to cases on collateral review. In
> such circumstances, we can be said to have "made" the
> given rule retroactive to cases on collateral review.

Id. at 2485–86. But Justice O'Connor qualified this
approach by explaining that:

> The relationship between the conclusion that a new
> rule is retroactive and the holdings that "ma[k]e" this
> rule retroactive, however, must be strictly logical-- i.e,
> the holdings must dictate the conclusion and not
> merely provide principles from which one may
> conclude that the rule applies retroactively.

Id. at 2486 (emphasis in original). In sum, under Tyler, it
is not enough that the new rule in Apprendi is arguably
retroactive; rather, we will grant Turner permission to file a
second habeas corpus application in the district court only

---

3. Nevertheless, this interpretation of Tyler  has apparently prevailed in at
least one of our sister circuit courts of appeals. E.g., Browning v. United
States, 241 F.3d 1262, 1266 (10th Cir. 2001).

5

if Supreme Court holdings dictate the conclusion that the new rule in Apprendi has been made retroactive to cases on collateral review.

Turner advances two principal arguments in support of the idea that the Court's holdings "dictate" that Apprendi applies retroactively on collateral review. First, he argues that the "new rule" announced by Apprendi is a substantive rule (as opposed to a procedural one) and that substantive rules automatically enjoy retroactive effect on collateral review. And second, he argues that Apprendi is an extension of In re Winship, 397 U.S. 358 (1970), which the Supreme Court has held fully retroactive, and therefore by logical necessity, Apprendi must be retroactive on collateral review as well. Neither of these arguments, however, persuades us that the Supreme Court has "made" Apprendi retroactive to cases on collateral review, in the sense that Tyler requires.

We agree with Turner that when analyzing a "new rule," the first question to ask is whether the rule is substantive or procedural in nature, because "the Supreme Court has created separate retroactivity standards for new rules of criminal procedure and new decisions of substantive criminal law." United States v. Woods, 986 F.2d 669, 676 (3d Cir. 1993). Under the substantive retroactivity standard, the appropriate inquiry is whether the claimed legal error was a " `fundamental defect which inherently results in a complete miscarriage of justice,' and whether `it presents exceptional circumstances where the need for the remedy afforded' by collateral relief is apparent." Id. (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). In contrast, new rules of criminal procedure are given retroactive effect on collateral review only if they can satisfy one of two narrow exceptions described in Teague v. Lane, 489 U.S. 288 (1989). First, "a court should apply a new criminal procedural rule retroactively if `it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " Woods, 986 F.2d at 677 (quoting Teague, 489 U.S. at 306). And second, "under Teague a court should apply a new procedural rule retroactively if `it requires the observance of those procedures that . . . are implicit in the concept of

6

ordered liberty.' " Id. (quoting Teague, 489 U.S. at 306). As is apparent from the above discussion, Turner is incorrect to assert that new substantive rules automatically receive retroactive effect on collateral review. Rather, such rules must meet the standard that we described in Woods.

More importantly, the Supreme Court's holdings certainly do not "dictate" that the new rule in Apprendi is substantive -- rather than procedural -- in nature. Turner characterizes the new rule in Apprendi as a substantive rule of constitutional law because it forces the government to treat certain facts as the equivalent of substantive offense elements (and thus submit them to a jury and prove them beyond a reasonable doubt), which otherwise would be mere sentencing factors determined by a judge. On the other hand, the government characterizes the new rule as purely procedural in nature, because the rule imposes certain procedural requirements (namely, submission to a jury and proof beyond a reasonable doubt) for the establishment of certain facts.

Significantly, the government's interpretation enjoys the support of the vast majority of courts to consider the issue. E.g., United States v. Hernandez, 137 F.Supp.2d 919, 929 (N.D. Ohio 2001) (noting that "most courts that have addressed the retroactivity of Apprendi have[assumed] . . . without discussion that the decision announced a constitutional rule of criminal procedure"); Levan v. United States, 128 F.Supp.2d 270, 276 (E.D. Pa. 2001) (stating that "Apprendi constitutes a procedural rule because it dictates what fact-finding procedure must be employed to ensure a fair trial"); Ware v. United States , 124 F.Supp.2d 590, 595 (M.D. Tenn. 2000) (same). But see Darity v. United States, 114 F.Supp.2d 355, 361 (W.D.N.C. 2000) (characterizing Apprendi as a "substantive change in the law"), overruled by United States v. Sanders , 247 F.3d 139, 146-151 (4th Cir. 2001). For the purposes of our analysis, however, we need not choose between these competing interpretations of Apprendi. It is enough for us to note that the new rule in Apprendi is merely arguably substantive -- certainly, no Supreme Court holdings "dictate" that Apprendi establishes a substantive rule of law-- and therefore, in light of the strict Tyler standard, Turner's argument must fail.

7

Turner's second argument is similarly flawed. According to In re Winship, 397 U.S. 358 (1970), a defendant cannot be convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Id. at 364. Turner points out that the Court has subsequently held both Winship and certain extensions of Winship to be fully retroactive. E.g., Hankerson v. North Carolina, 432 U.S. 233, 242-44 (1977); Ivan V. v. City of New York, 407 U.S. 203, 204-05 (1972). Turner describes the new rule in Apprendi as simply an extension and application of the basic Winship rule, and therefore concludes that Apprendi, like Winship, must be applied retroactively on collateral review.

Even if we assume that Turner is correct to describe the new rule in Apprendi as simply a new extension and application of Winship, this does not mean that Supreme Court holdings "dictate" that Apprendi be applied retroactively to cases on collateral review. Instead, Turner finds himself in essentially the same position as the petitioner in Tyler, who argued that the rule contained in Cage v. Louisiana, 498 U.S. 39 (1990), had been"made retroactive to cases on collateral review by the Supreme Court." Tyler, 121 S. Ct. at 2483-85. In Cage, the Court described the issue before it as "whether the reasonable-doubt instruction in this case complied with Winship," and ultimately concluded that "the instruction at issue was contrary to the `beyond a reasonable doubt' requirement articulated in Winship." Cage, 498 U.S. at 40-41. In other words, Cage was a straightforward extension and application of Winship -- just as Turner characterizes Apprendi -- and yet the Tyler Court rejected the petitioner's argument, observing that "[t]he most he can claim is that . . . this Court should make Cage retroactive to cases on collateral review. What is clear, however, is that we have not `made' Cage retroactive to cases on collateral review." Tyler, 121 S. Ct. at 2484 (emphasis in original). Similarly, the most that Turner can claim is that the Supreme Court should make Apprendi retroactive to cases on collateral review, and not that existing Supreme Court holdings

8

dictate that result. Accordingly, Turner cannot satisfy the
Tyler standard.4

In sum, we will deny Turner's request for leave to file a
second habeas corpus application in the district court
because he cannot make a "prima facie showing" that his
habeas corpus application contains "a new rule of
constitutional law, made retroactive to cases on collateral
review by the Supreme Court, that was previously
unavailable." We note, however, that our decision does not
address the underlying merits of Turner's Apprendi claim.
Accordingly, we will deny Turner's motion without prejudice
in the event that the Supreme Court subsequently makes
Apprendi retroactive to cases on collateral review. E.g.,
Browning v. United States, 241 F.3d 1262, 1267 (10th Cir.
2001).

In accordance with the foregoing, Carnell Turner's motion
for leave to file a second habeas corpus application in the
district court will be DENIED without prejudice.

4. Turner also makes an alternative attempt to satisfy Tyler by arguing
that the new rule in Apprendi meets the standards for retroactivity of
new procedural rules articulated in Teague v. Lane, 489 U.S. 288 (1989).
Turner concedes that Apprendi does not satisfy the first Teague
exception, but suggests that it meets the second Teague exception as a
new procedural rule that is "implicit in the concept of ordered liberty."
Teague, 489 U.S. at 311. However, Turner does not press this point,
most likely because any attempt to fit Apprendi within the Teague
framework would flatly contradict his argument that Apprendi
announces a new rule of substantive law, and is therefore outside the
ambit of Teague altogether. Moreover, even if we assume that the new
rule in Apprendi falls within the Teague framework, the most we can say
is that Apprendi arguably satisfies Teague's second exception -- not that
Supreme Court holdings "dictate" that result-- as evidenced by the
disagreement on this issue in the federal courts. E.g., United States v.
Pinkston, 2001 WL 823470, at *3 (M.D. Pa. July 17, 2001) (collecting
cases). Thus, Teague cannot assist Turner in meeting his burden under
Tyler.

9

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

10